UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JORDAN ACQUISITION GROUP, L.L.C..,
d/b/a American Auto-Matrix, a Michigan
limited liability company,

        Plaintiff,

v.

TSI INCORPORATED, a Minnesota
corporation,

        Defendant.
_____/

Case No. 10-11988

Honorable Patrick J. Duggan

## **OPINION AND ORDER**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on July 6, 2011.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                     U.S. DISTRICT COURT JUDGE

On May 17, 2010, Jordan Acquisition Group, L.L.C. ("Jordan") filed this suit against TSI Incorporated ("TSI"), seeking declaratory, injunctive, and monetary relief for TSI's alleged infringement of Jordan's patent on laboratory fume hood control systems. Before the Court is Jordan's motion to strike the defense of inequitable conduct from TSI's Answer. Also before the Court is TSI's motion for leave to file an amended Answer. The matter has been fully briefed by the parties, and the Court heard oral argument on June 21, 2011. For the reasons stated below, the Court grants TSI's motion for leave to file an amended Answer and denies Jordan's motion to strike as moot.

## I. Factual and Procedural Background

On June 9, 1998, Jordan's predecessor-in-interest, American Auto-Matrix, Inc. ("AAM"), obtained U.S. Patent No. 5,764,579 ("the '579 patent"), "System for Controlling Laboratories With Fume Hoods." Compl. Ex. A. Jordan came to believe that TSI was infringing on the '579 patent in connection with its sales of room pressure controls and laboratory fume hoods. After licensing discussions failed, Jordan filed this infringement action.

On March 14, 2011, Jordan moved to strike the affirmative defense of inequitable conduct from TSI's Answer, arguing that TSI had not pleaded the defense with sufficient particularity. In response, TSI moved for leave to file an amended Answer containing a more definite statement of the facts underlying this defense. Jordan argues that the Court should deny TSI's motion for leave because amendment would be futile.

## II. TSI's Motion for Leave to file an Amended Answer

### A. Standard of Review

Federal Rule of Civil Procedure 15(a)(2) provides that the Court should freely give leave to amend when justice so requires. The Court has discretion in granting leave to amend. *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962). In the absence of any apparent or declared reason, such as undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility of amendment, leave to amend should be freely given. *Id.* "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

The standard a pleading must meet to withstand a Rule 12(b)(6) challenge is clear. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Supreme Court recently provided in *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 129 S. Ct. at 1949. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. In conducting this analysis, the Court may consider the pleadings, exhibits attached thereto, and documents referred to in the complaint that are central to the plaintiff's claims. *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).

## B. Requirements for Pleading Inequitable Conduct

Federal Circuit law governs the determination of whether a party has sufficiently pleaded the defense of inequitable conduct. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1318 (Fed. Cir. 2009). Inequitable conduct must be pleaded with particularity under Federal Rule of Civil Procedure 9(b). *Id.* Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake," while "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

The inequitable conduct defense has two elements: "(1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO."[1] *Exergen*, 575 F.3d at 1327 n.3 (citing *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008)). "A pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b)." *Id.* at 1326–1327 (citing *King Auto., Inc. v.*

---

[1] "PTO" refers to the United States Patent and Trademark Office.

*Speedy Muffler King, Inc.*, 667 F.2d 1008, 1010 (C.C.P.A. 1981)).

As for the first element, "Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1327. A party must identify specific individuals who knew of the material information and deliberately withheld or misrepresented it. *Id.* at 1329. The "what" and "where" requirements mandate that a party identify the claims to which the information is relevant. *Id.* The party must state why the information is material and how an examiner would have used the information in assessing the patentability of claims. *Id.* at 1329-30.

The second element requires a party to establish that an individual had knowledge of the withheld material information or the falsity of the material misrepresentation and acted with specific intent to deceive the PTO. *Id.* at 1327 (citing *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1116 (Fed. Cir. 1996)). The pleadings must "allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Id.*

## C. Application to TSI's Proposed Amended Answer

TSI's proposed Amended Answer identifies three separate bases for its inequitable conduct defense, and provides additional detail relating to each.

### 1. Failure to Disclose Identities of Certain Inventors

TSI alleges that the applicants of the '579 patent intentionally failed to disclose the identities of certain inventors who contributed to the invention. Proposed Am. Answer ¶¶ 74-81, Dkt. #28-1. Specifically, TSI alleges that one or more employees of Voltec, Inc. provided ideas that were incorporated into the invention with respect to claims 17 and 51 of the patent. *Id.* ¶¶ 77-78. TSI claims that the applicants "intentionally failed to disclose

5

the one or more of those employees as inventors in order to maintain the applicants' and American Auto-Matrix's sole and undiluted ownership of the '579 invention and the resulting patent." *Id.* ¶ 81.

This claim satisfies *Exergen*'s "who, what, when, where and how" requirements, as it alleges that certain named individuals were aware of the Voltec employees' documented contributions to the invention, yet withheld that information from the PTO when applying for the '579 patent. TSI claims that this information was material because American Auto-Matrix would not have been granted undiluted patent ownership if it were disclosed. As American Auto-Matrix had an obvious incentive to obtain undiluted ownership, these facts, if true, allow the reasonable inference that the named individuals acted with the specific intent to withhold material information.

### 2. Misrepresentation of Invalidating Prior Art

TSI claims that the applicants "knowingly misrepresented" the nature of a prior patent (the "Sharp reference") which would have invalidated the '579 patent. *Id.* ¶ 82. TSI alleges that the Sharp reference includes a system for controlling air flow using a damper, while the applicants represented to the PTO that it did not. *Id.* ¶ 83. TSI further alleges that the Sharp reference includes a system for monitoring the laboratory state, and the applicants represented to the PTO that it did not. *Id.* ¶ 84.

Again, this claim satisfies *Exergen*'s requirements, as it alleges that certain named individuals were aware of features in the Sharp reference and intentionally misrepresented those features to the PTO when applying for the '579 patent. TSI claims that this misrepresentation was material, as without it, the PTO would have rejected claim 7 of the

6

'579 patent. *Id.* ¶ 86. Because a portion of the '579 patent may have been rejected absent the misrepresentation, the pleaded facts, if true, allow the reasonable inference that the named individuals acted with the intent to misrepresent the nature of the Sharp reference.

### 3. Misrepresentation to Avoid the "Public Use" Bar

TSI claims that two AAM employees submitted declarations in support of the '579 patent application which included affirmative misrepresentations. *Id.* ¶ 88. These declarations allegedly stated that the invention had been "used, sold by, and disclosed to Voltec, Inc. as early as 1988, but only under a 'confidentiality agreement.'" *Id.* ¶ 89. This confidentiality agreement purportedly ensured that the disclosures would not trigger the "public use" bar of 35 U.S.C. § 102. Proposed Am. Answer ¶ 89. TSI alleges that the confidentiality agreement applied only to financial statements relating to a "business combination," and therefore, did not protect against public disclosure. *Id.* ¶ 90.

This claim is stated with sufficient particularity. It names individuals who were allegedly aware of the scope of the confidentiality agreement, yet misrepresented its scope to the PTO in order to avoid the public use bar. As the alleged misrepresentation ensured the patentability of an invention that would have otherwise been barred, it was obviously material. Given the strong incentive to avoid the public use bar, these facts, if true, would allow a reasonable inference that the named individuals acted with the specific intent to deceive the PTO concerning the scope of the confidentiality agreement.

### III. Conclusion

Although TSI bears the heavy burden of establishing both materiality and intent to deceive by clear and convincing evidence, *Star*, 537 F.3d at 1365, it has at least pleaded

7

inequitable conduct with sufficient particularity. The Court therefore concludes that TSI's proposed amendment is not futile, and leave to amend should be granted. Accordingly, the Court denies as moot Jordan's motion to strike the inequitable conduct defense from TSI's original Answer.

Jordan has raised the concern that TSI alleged inequitable conduct in order to launch an unjustified "fishing expedition" of wide-ranging discovery. To address this concern, the Court limits discovery relating to the inequitable conduct defense to the three claims identified by TSI in its Amended Answer.

For the reasons stated above,

**IT IS ORDERED** that TSI's Motion for Leave to File an Amended Answer is **GRANTED**.

**IT IS FURTHER ORDERED** that Jordan's Motion to Strike is **DENIED AS MOOT**.

                               s/PATRICK J. DUGGAN
                               UNITED STATES DISTRICT JUDGE

Copies to:
Emily J. Zelenock, Esq.
Andrew M. Grove, Esq.
Robert C. Brandenburg, Esq.